# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

JUDGMENT - WITH ORAL ARGUMENT



Date: January 16, 2008

BEFORE:            Honorable DANIEL A. MANION, Circuit Judge

                   Honorable TERENCE T. EVANS, Circuit Judge

                   Honorable DIANE S. SYKES, Circuit Judge

No. 06-2220

ALONZO SUGGS,
          Petitioner - Appellant
  v.

UNITED STATES OF AMERICA,
          Respondent - Appellee


Appeal from the United States District Court for the
Southern District of Illinois
No. 04 C 730, William D. Stiehl, Judge

     We VACATE Suggs' sentence and REMAND for resentencing. In all other aspects, the judgment of the district court is AFFIRMED. The above is in accordance with the decision of this court entered on this date.


(1061-110393)

**RECEIVED**

MAR 2 8 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE




## In the
## United States Court of Appeals
### For the Seventh Circuit

No. 06-2220

ALONZO SUGGS,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04 C 730—**William D. Stiehl**, *Judge.*

ARGUED SEPTEMBER 26, 2007—DECIDED JANUARY 16, 2008

Before MANION, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Alonzo (who one of the key witnesses in this case called "Lo") Suggs was found guilty after a 2001 jury trial of conspiracy to possess cocaine with intent to distribute. He was also convicted on an unrelated charge of being a felon in possession of a firearm. Suggs was sentenced to a term of 300 months on the cocaine conviction and a concurrent term of 120 months on the firearm count.

Suggs (and a codefendant, Joyce Ogle, who was also convicted) took a direct appeal, arguing that the district court committed plain error in allowing the government to present evidence of multiple conspiracies, one

of which was not charged in the indictment. We rejected his appeal (as well as Ogle's) and affirmed the judgment of the district court on February 14, 2003. *United States v. Suggs*, 59 Fed. Appx. 818 (7th Cir. 2003).

Subsequent to our 2003 order, Suggs returned to the district court and, with new counsel[1] at his side, filed a § 2255 petition alleging that his prior counsel rendered ineffective assistance by failing to raise two arguments on appeal that had a much greater chance of success than the one argument which was actually advanced. The district court denied the petition, and Suggs is now back here a second time seeking a reversal of that order.

The facts underlying Suggs' conviction were noted in our 2003 order, and they will not be repeated here. As relevant for our purposes, we step back a moment to July of 2002 when prior counsel sent a six-page letter to Suggs outlining his strategy for appeal. In the letter, counsel identified three district court errors that he said had "great merit" and would be worthy of airing on appeal. According to counsel, the district court mistakenly: (1) admitted evidence of an uncharged conspiracy involving Ogle and Suggs; (2) admitted Ogle's written statement in violation of Suggs' right to confrontation; and (3) enhanced Suggs' sentence based on an improper adjustment to his guideline range.

Later, however, in Suggs' appellate brief, his attorney inexplicably raised only the uncharged conspiracy issue. As we said, we rejected this argument and affirmed Suggs' conviction and sentence in 2003.

---

[1] New counsel, Thomas M. McGrath from Mayer, Brown, Rowe & Maw of Chicago, has done a splendid job representing Mr. Suggs on this appeal. As always on pro bono appointments accepted by attorneys from Mayer, Brown, Marc Kadish has assisted Mr. McGrath on this appeal.

No. 06-2220 3

Suggs now argues that his prior attorney's failure to raise the Confrontation Clause and sentencing issues deprived him of his Sixth Amendment right to effective assistance of appellate counsel. In evaluating the district court's decision, we review fact findings for clear error and issues of law *de novo*. *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002).

We employ the familiar two-pronged test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to evaluate the effectiveness of both trial and appellate counsel. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985). To establish ineffectiveness, Suggs must demonstrate that his appellate counsel's performance was deficient and that this deficiency prejudiced him. *Gray*, 800 F.2d at 646.

Suggs' ineffectiveness claim rests on his belief that his attorney failed to raise two viable arguments on appeal. To evaluate Suggs' claim, we must first analyze the trial court record to determine whether his appellate attorney, in fact, ignored "significant and obvious" issues. *Id.* We must then compare each neglected issue to, in this case, the issue actually raised on appeal. *Id.*

Only if an ignored issue is "clearly stronger" than the arguments raised on appeal will the attorney's performance be considered constitutionally deficient (thereby satisfying the first prong of the *Strickland* test). To establish prejudice—the other component of the *Strickland* test—Suggs must show that there is a reasonable probability that, but for the deficient performance of his attorney, the result of the appeal would have been different. *Strickland*, 466 U.S. at 694.

Suggs argues that his attorney should have appealed the district court's decision to admit Ogle's written statement and her telephone conversations with John Ellebracht. Ellebracht, as we noted in 2003, was arrested at a

St. Louis airport while carrying a suitcase loaded with over 7 kilos of cocaine. After his arrest, Ellebracht quickly agreed to cooperate in an investigation of Ogle and "Lo." Because these statements implicated Suggs—her codefendant—at a joint trial during which Ogle did not testify, the introduction of this evidence, Suggs argues, violated his right to confrontation. *See Bruton v. United States*, 391 U.S. 123, 125-26 (1968). While we agree that this *Bruton* issue may have been (1) significant and obvious, and (2) clearly stronger than the uncharged conspiracy argument Suggs' attorney raised on direct appeal, the attorney's failure to raise this issue did not prejudice Suggs.

We agree with Suggs that the confrontation issue was obvious, clear-cut, and important. Suggs' attorneys knew of the problem: his trial counsel objected to the introduction of this evidence, and his counsel, as we noted, described the issue as one of "great merit" in his pre-appeal brief letter.

The introduction of Ogle's statements violated *Bruton*: a confession of a nontestifying codefendant (Ogle) incriminating the defendant (Suggs) was admitted into evidence at their joint trial.[2] It was clear from Ogle's narrative that Suggs was involved in the conspiracy: he received the phone calls of a drug courier (Ellebracht) and

---

[2] The government, also, could not have dodged the *Bruton* problem by arguing that Ogle's statement fell under the *Ohio v. Roberts* umbrella. Ogle's statement, which spread the blame for the conspiracy to Suggs, was "inherently unreliable," and thus did not fall within a "firmly rooted" hearsay exception. *Lilly v. Virginia*, 527 U.S. 116, 133, 119 S. Ct. 1887, 1898 (1999). Nor was her statement especially trustworthy. She had an incentive to curry favor with the agents and to deflect blame from Ellebracht, her former lover, for whom she acknowledged she "[w]ould do anything."

No. 06-2220 5

ordered Ogle (Suggs' henchperson) to do his dirty work (to meet with that courier).[3]

Even if we assume, however, that the *Bruton* issue was substantially stronger than the uncharged conspiracy argument counsel raised on appeal (the strength of which was dubious, as we will explain), the district court's error in receiving Ogle's statements was harmless. Even without the statements, the evidence tying Suggs to the drug conspiracy was very strong. Although Ogle's statements confirmed details of a July 2000 drug delivery, the government established all material facts of that event through Ellebracht's testimony.

While on the stand, Ellebracht appeared to have some memory problems (once even demonstrating the risks of drug use and apparently forgetting which state—Missouri or Illinois—he was then in). Nonetheless, he told a convincing story of how Suggs recruited him to work as a drug courier. During the first trip, Suggs gave Ellebracht a large amount of money to deliver to Phoenix; during later trips, Ellebracht transported luggage that he certainly knew was loaded with drugs.

The government introduced several pieces of evidence that supported Ellebracht's story. In his wallet, Ellebracht carried a business card on which he had written "Lo's" phone number. After his arrest, Ellebracht picked "Lo" out of a photo lineup and, later, identified Suggs in court as "Lo." The police confirmed the details of 20 of Ellebracht's trips to Phoenix. Additionally, three witnesses— Marico Bratcher, Stacy Wilkins, and Kevin Wren— independently identified Suggs as their regular supplier of cocaine.

---

[3] Even though Ogle, in her statement, referred to "Lo" and not to Suggs directly, nicknames fall within *Bruton's* protection. *Gray v. Maryland,* 523 U.S. 185, 186, 118 S. Ct. 1151, 1152 (1998).

6                                                            No. 06-2220

Considered as a whole, these facts demonstrate that any error Suggs' appellate attorney made in failing to raise the *Bruton* issue had no effect on the outcome of his appeal. Thus, because Suggs cannot establish that he was prejudiced by any error on this point, his first ineffectiveness argument fails. Suggs' second argument, however, has legs.

Suggs argues that his attorney should have attacked the sufficiency of the information underlying the district court's decision to enhance Suggs' guideline range by two levels under U.S.S.G. § 2D1.1(b)(1). This omission, we think, satisfies both prongs of the *Strickland* test.

At sentencing, the district court concluded that Suggs deserved a two-point enhancement because a witness, Wren, "testified that he had dealings with [Suggs], saw him with a gun, saw him carry the gun, he had the gun." As Suggs now correctly points out, however, Wren's testimony doesn't quite fit this description. In fact, Wren testified only that he saw Suggs carrying one or more "weapons":

> Q. [Prosecutor] Did you ever see him carrying any weapons?
>
> A. [Kevin Wren] Yes.
>
> Q. And was that on more than one occasion?
>
> A. Maybe once or twice at the most.

While we are hard pressed to believe that Suggs was carrying pepper spray or some other unobjectionable implement, Wren's testimony does not establish that Suggs carried a "dangerous" weapon within the meaning of § 2D1.1(b)(1). The district court's decision on this point was triggered, no doubt, by an error in the PSR, which stated that "according to the government," Wren testified that he saw Suggs in possession of firearms

No. 06-2220                          7

during the conspiracy. This error was repeated in the addendum to the PSR and in the government's representations to the court at sentencing.

The error was also obvious. Suggs' trial counsel objected to the enhancement, arguing that "no direct evidence" indicated that Suggs possessed a gun during the conspiracy. Also, in his letter to Suggs, prior counsel emphasized that he "positively want[ed] to raise the errors made by the court in accepting the [§ 2D1.1(b)(1)] PSI recommendation." While neither of Suggs' attorneys identified the specific inconsistency between the district court's conclusion and Wren's actual testimony, "the groundwork had obviously been laid," *Mason v. Hanks*, 97 F.3d 887, 894 (7th Cir. 1996), to contest on appeal the findings underlying the weapon enhancement.

This issue was also significant. We generally give great deference to the district court's factual findings underlying sentencing decisions. *See United States v. Johnson*, 227 F.3d 802, 812 (7th Cir. 2000). Here, though, the district court's conclusion that Suggs possessed a dangerous weapon was based on an inaccurate recollection of—or an unreasonable inference from—Wren's testimony. We cannot assume that the "weapon" carried by Suggs, if Wren's statement is reliable, was necessarily a "dangerous weapon" as that term is defined in Application Note (D) to § 1B1.1 of the guidelines.

Also, this issue was clearly stronger than the variance argument Suggs' attorney raised on appeal. Suggs' attorney faced an uphill battle on that argument, since a claim of a fatal variance is treated as an attack on the sufficiency of the evidence, *United States v. Hewlett*, 453 F.3d 876, 879 (7th Cir. 2006). Challenging the sufficiency of the evidence is always a "daunting" task, *United States v. Stevens*, 453 F.3d 963, 965 (7th Cir. 2006), with a tough standard: if a reasonable juror could have concluded that

Suggs was a part of the single, charged conspiracy, a variance is not fatal. *Hewlett*, 453 F.3d at 879. Indeed, when we considered this issue on Suggs' direct appeal, we concluded that the evidence tying Suggs to the charged conspiracy was "overwhelming."

Finally, we conclude that Suggs was prejudiced by his attorney's failure to raise the § 2D1.1(b)(1) issue. A reduction of Suggs' base offense level from 39 to 37 would have reduced his guideline range from 292-365 months to 235-293 months. That change could very well net Suggs a much shorter sentence on the conspiracy count. For these reasons, we VACATE Suggs' sentence and REMAND for resentencing. In all other respects, the judgment of the district court is AFFIRMED.

A true Copy:

    Teste:

*Clerk of the United States Court of Appeals for the Seventh Circuit*